IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Freddie Lee Smith, | ) | Civil Action No.  8:13-cv-02657-JMC-JDA |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(a), D.S.C.[1]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for supplemental security income ("SSI").[2]  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

**PROCEDURAL HISTORY**[3]

On August 9, 2010, Plaintiff protectively filed an application SSI alleging an onset of disability date of July 31, 2010.  [R. 141–47.]  At the hearing before the Administrative

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

[3]Plaintiff filed two previous applications for disability benefits.  Plaintiff filed an application in 2006 that was denied in 2006 at the hearing level, and he filed another application in 2009 that was denied in 2010 ("the 2010 decision") at the hearing level.  [R. 14, 77–84, 88-102.]

Law Judge ("ALJ"), Plaintiff amended his alleged onset date to December 3, 2010. [R. 42.] The claim for SSI benefits was denied initially and upon reconsideration by the Social Security Administration ("the Administration"). [R. 119–24, 128–34.] Plaintiff requested a hearing before an ALJ, and on July 17, 2012, ALJ Gregory M. Wilson conducted a de novo hearing on Plaintiff's claims. [R. 38–73.]

The ALJ issued a decision on October 5, 2012, finding Plaintiff not disabled under § 1614(a)(3)(A) of the Social Security Act ("the Act"). [R. 12–33.] At Step 1,[4] the ALJ found Plaintiff had not engaged in substantial gainful activity since August 9, 2010, the application date. [R. 14, Finding 1.] At Step 2, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, hypertension, migraine headaches, anxiety disorder, depression, and borderline intellectual functioning. [R. 15, Finding 2.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 17, Finding 3.] The ALJ specifically considered Listings 1.04, Disorders of the Spine; 4.00H(I), with respect to Plaintiff's hypertension; 11.00, with respect to Plaintiff's neurological impairments; 12.05, Mental Retardation; and 12.04, 12.06, and 12.09, Mental Impairment. [R. 17–22.] Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). I specifically find that

---

[4]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

> the claimant can lift and/or carry up to 20 pounds on an occasional basis and 10 pounds on a frequent basis. The claimant can sit, stand, or walk for up to 6 hours out of an 8-hour workday. He is limited to occasional overhead reaching. The claimant is limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling. The claimant is limited to never climbing ropes, ladders, and scaffolding. The claimant must avoid concentrated exposure to hazards. Furthermore, the claimant is limited to simple, 1-2 step tasks.

[R. 22, Finding 4.] The ALJ determined Plaintiff had no past relevant work. [R. 31, Finding 5.] Based on his age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. [R. 31, Finding 9.] Accordingly, the ALJ found Plaintiff had not been under a disability as defined by the Act from August 9, 2010, through the date of the decision. [R. 32, Finding 10.]

Plaintiff requested Appeals Council review of the ALJ's decision, and the Council declined review. [R. 1–8] Plaintiff filed this action for judicial review on September 27, 2013. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the final administrative determination of the Commissioner should be reversed and Plaintiff should be awarded SSI because

1. the ALJ committed reversible error by failing to properly apply *Albright v. Commr. of Soc. Sec. Admin.*, 174 F.3d 473 (4th Cir. 1999) [Doc. 16 at 8–9];

2. the Greenville Office of Disability Adjudication and Review ("ODAR") denied Plaintiff his right to due process by failing to follow the Administrative Procedures Act ("APA") and improperly assigning his case to the same ALJ that previously denied his application [*id.* at 9–11];

3.   the ALJ committed reversible error by failing to accord great weight to the opinions of Plaintiff's treating medical providers that he suffered limitations so severe that he was disabled [*id.* at 11–12];

4.   the ALJ committed reversible error by according more weight to the reports of non-examining, non-treating state agency doctors than to Plaintiff's treating physicians [*id.* at 12–14]; and,

5.   the ALJ committed reversible error by selectively extracting isolated evidence from the records which was unfavorable to Plaintiff rather than consider the entire record in context [*id.* at 14–16].

The Commissioner contends the final decision is supported by substantial evidence and argues that

1.   the ALJ properly applied the Fourth Circuit Court of Appeals decision in *Albright* when considering Plaintiff's latest application for benefits [Doc. 20 at 4–6];

2.   Plaintiff has not established any due process violation resulting from a purported APA violation [*id.* at 6–8];

3.   the ALJ properly evaluated the medial opinions of record, including the medial opinion of Dr. Joy Dina Hudson ("Dr. Hudson") [*id.* at 8–13]; and

4.   the ALJ's discussion shows he adequately considered and weighed the evidence of record [*id.* at 13–14].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687

(S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts

5

to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals

6

Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

7

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 416.920.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

## A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* § 416.974–.975.

## B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the

10

impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.   *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[6]   20 C.F.R. § 416.920(a)(4)(iii), (d).

### D.   *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[7] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 416.960(b).

### E.   *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could

---

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[7]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).

11

perform other work that exists in the national economy.  *See* 20 C.F.R. § 416.920(f)–(g);

*Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner

may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").

Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from

an exertional impairment, without significant nonexertional factors.[8]  20 C.F.R. Pt. 404,

Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983)

(stating that exclusive reliance on the grids is appropriate in cases involving exertional

limitations).  When a claimant suffers from both exertional and nonexertional limitations, the

grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the

Commissioner must use a vocational expert to establish the claimant's ability to perform

other work.  20 C.F.R. § 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have

found that the grids cannot be relied upon to show conclusively that claimant is not

disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove

by expert vocational testimony that despite the combination of exertional and nonexertional

impairments, the claimant retains the ability to perform specific jobs which exist in the

national economy.").  The purpose of using a vocational expert is "to assist the ALJ in

determining whether there is work available in the national economy which this particular

---

[8]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 416.969a(c)(1).

claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to

be relevant, "it must be based upon a consideration of all other evidence in the record, . .

. and it must be in response to proper hypothetical questions which fairly set out all of

claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783

F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant

issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important

when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir.

1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe

into, inquire of, and explore for all the relevant facts, . . . being especially diligent in

ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.*

(internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's

impairments is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence" in the record, the

ALJ must give it controlling weight. 20 C.F.R. § 416.927(c)(2); *see Mastro v. Apfel*, 270

F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is

unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion

does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless

assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

14

IV.    **Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

V.    **Pain**

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter

15

of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."

*Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects

of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements

by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485;

*see also* 20 C.F.R. § 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the

record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ

must articulate specific and adequate reasons for doing so, or the record must be obvious

as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Although credibility determinations are generally left to the ALJ's discretion, such

determinations should not be sustained if they are based on improper criteria. *Breeden*,

493 F.2d at 1010 ("We recognize that the administrative law judge has the unique

advantage of having heard the testimony firsthand, and ordinarily we may not disturb

credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

### Consideration of Medical Evidence

Plaintiff argues the ALJ committed reversible error when he failed to accord "great weight" to Dr. Hudson's Physician's Statements which listed restrictions so severe that Plaintiff would be considered disabled. [Doc. 16 at 11.] Plaintiff also argues the ALJ committed reversible error in giving the opinions of non-examining, non-treating physicians more weight than Plaintiff's treating physician. [*Id.* at 13.] Lastly, Plaintiff argues the ALJ selectively extracted evidence from the record which was unfavorable to Plaintiff rather than considering the entire record in context. [*Id.* at 15.] The Commissioner contends the ALJ properly afforded more weight to a non-treating state agency physician or psychologist than to a treating source upon weighing all of the medical evidence. [Doc. 20 at 9.] The Commissioner also contends the ALJ properly weighed all of the evidence and that Plaintiff is merely seeking to have the Court engage in re-weighing the evidence. [*Id.* at 13.] Upon review, the Court agrees with the Commissioner.

The responsibility for weighing evidence falls on the Commissioner or the ALJ, not the reviewing court. *See Craig*, 76 F.3d at 589; *Laws*, 368 F.2d at 642; *Snyder*, 307 F.2d at 520. The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the

physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). ALJs typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 416.927(c). Additionally, SSR 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996). However, not every opinion offered by a treating source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating

19

> source, they can never be entitled to controlling weight or given
> special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. § 416.927(d)(3)

(stating an ALJ does not have to "give any special significance to the source of an opinion

on issues reserved to the Commissioner," such as an opinion that the claimant is disabled,

the claimant's impairments meet or equal a listing, or the claimant has a certain RFC).

### Summary of Dr. Hudson's Medical Records and Opinions

A review of the medical evidence shows Dr. Hudson treated Plaintiff from August 8,

2011 through at least September 24, 2012. [R. 656–705.]  Treatment notes from Plaintiff's

August 8, 2011 visit indicate he was being seen for headaches, anxiety, and depression.

[R. 656.]  Plaintiff denied chest pain, discomfort, or shortness of breath.  [R. 657.]  Plaintiff

was noted to be well developed, well nourished, and in no acute distress.  [*Id.*]  Dr. Hudson

diagnosed Plaintiff with hypertensive heart, benign; restarted Plaintiff on his medications;

and ordered lab work for hyperlipidemia.  [R. 658.]  Dr. Hudson deferred any

recommendation on Plaintiff's anxiety until he visited his psychiatrist.  [*Id.*]  With respect to

Plaintiff's complaints of neck pain, Dr. Hudson gave Plaintiff an exercise handout and

prescribed Naprosyn as needed.  [R. 659.]

Plaintiff saw Dr. Hudson again on August 31, 2011 for depression and reported his

medication for headaches made him sick.  [R. 660.]  Plaintiff reported neck pain when

chewing food and that his left arm felt like it fell asleep at times.  [*Id.*]  Dr. Hudson noted

Plaintiff appeared well developed, well nourished, and in no acute distress, but with a

moderately depressed mood.  [R. 661.]

On September 12, 2011, Plaintiff returned to Dr. Hudson complaining of headaches, neck pain, and a sore throat. [R. 663.] Plaintiff appeared well developed, well nourished, and in no acute distress. [*Id.*] Dr. Hudson diagnosed Plaintiff with strep throat and indicated Plaintiff needed a referral to a neurologist. [R. 664.] On October 19, 2011, Plaintiff returned to Dr. Hudson indicating he was in constant pain on the right side of his head and left arm even though he was taking his blood pressure medication every day. [R. 665.] Treatment notes again indicated Plaintiff appeared well developed, well nourished, and in no acute distress. [R. 666.] On exam, Plaintiff had normal gait, no ataxia, and normal alignment and mobility of his head and neck. [R. 667.] Dr. Hudson noted Plaintiff's hypertension was uncontrolled and she increased his doses of terazosin "because of [Plaintiff's] belligerence and insistence that these meds are harmful, and his avoiding Beta blockers and Ca channel blockers." [*Id.*] Dr. Hudson also suggested several chronic headache therapies, but Plaintiff laughed and said he had tried them all and they didn't work. [*Id.*] Dr. Hudson would not prescribe opiates due to Plaintiff's behaviors regarding percocet, and Plaintiff could not take NSAIDs; thus, there was nothing else she could offer him other than to send him to see a neurologist. [*Id.*]

On November 14, 2011, Dr. Hudson completed a Physician's Statement for the South Carolina Department of Social Services ("SCDSS"). [R. 669.] She stated that, due to his chronic daily migraines, neck pain, and degenerative disc disease, Plaintiff was not able to engage in any time of employment and she was uncertain when he would be able to work. [*Id.*]

Plaintiff returned to Dr. Hudson on February 6, 2012. [R. 677.] Plaintiff indicated he was tolerating his blood pressure medication but taking Depakote with Topamax made

21

his head hurt worse. [*Id.*] Plaintiff appeared well developed, well nourished, and in no acute distress. [R. 678.] Dr. Hudson changed his prescritptions. [R. 679.] On February 27, 2012, Plaintiff complained he was still feeling depressed, could not afford his medication, and needed his blood pressure pills refilled. [R. 681.]

On April 2, 2012, Plaintiff saw Dr. Hudson for neck and arm pain. [R. 685.] Treatment notes indicate that Plaintiff was having trouble affording his prescriptions. [*Id.*] Plaintiff appeared well developed, well nourished, and in no acute distress. [R. 686.] Plaintiff was directed to continue with strengthening exercises, stretches, and pain medication as needed for his cervical radiculopathy. [*Id.*] Plaintiff was given Cymbalta for his depression and continued on Percocet for his headaches and Losartan for his blood pressure. [R. 686–87.] On May 21, 2012, Plaintiff saw Dr. Hudson for neck pain and stated he was having difficulty swallowing and chewing. [R. 688.] Plaintiff advised Dr. Hudson that he had neck imaging done at North Grove and had been told he needed neck surgery. [*Id.*] Dr. Hudson requested the records from North Grove and continued Plaintiff on his pain and hypertension medications. [R. 689–90].

On May 23, 2012, Dr. Hudson completed another SCDSS Physician's Statement indicating Plaintiff's chronic severe neck pain and headaches prevented him from engaging in any type of employment. [R. 691.] Dr. Hudson also noted the presence of cervical spondylosis with radiculopathy and chronic migraines with spinal canal narrowing and cord effacement. [*Id.*] She recommended C-spine surgery and stated Plaintiff's condition was temporary and total. [*Id.*] Dr. Hudson limited Plaintiff to lifting or carrying no more than five pounds with his left arm and indicated he would likely be absent from work more than four times each month. [R. 692.]

On June 15, 2012, Plaintiff saw Dr. Hudson for pain and noted his anxiety was not improving with medication; Plaintiff reported experiencing three deaths in his family and being under a lot of stress.  [R. 694.]   On exam, Plaintiff appeared well developed, well nourished, and in no acute distress.  [R. 695.]  Plaintiff received an injection of Rocephine.  [R. 697.]  Plaintiff returned on September 24, 2012 with complaints of leg pain, headache, and depression.  [R. 698.]  Plaintiff reported that his wife of 18 years left him.  [*Id.*]  Dr. Hudson noted Plaintiff's depression was worse due to his situation and gave him Pristiq.  [R. 699.]  On October 8, 2012, Plaintiff reported he was still depressed, felt sleepy on Pristiq, and was out of samples.  [R. 702.]  He also reported that the right side of his face, upper forehead, and top of his head were in pain and tender to touch.  [R. 702.]  Dr. Hudson changed his prescription of Pristiq to Viibryd and ordered an MRI of his head. [R. 704.]

### *Summary of the State Agency Medical Consultants' Opinions*

Plaintiff was also seen by Dr. Robert Hughs ("Dr. Hughs"), Dr. Saba Kulathungam ("Dr. Kulathungam"), Dr. Richard Waranch ("Dr. Waranch") (collectively, "the State agency medical consultants").  [R. 623, 634, 635.]  On September 27, 2010, Dr. Hughs performed a State agency RFC assessment of Plaintiff.  [R. 623]  He found Plaintiff had the RFC to lift and/or carry up to 20 pounds on an occasional basis, lift and/or carry up to 10 pounds on a frequent basis, stand or walk a total of 6 hours out of an 8-hour workday, and sit for about 6 hours out of an 8-hour workday.  [R. 624.]  Dr. Kulathungam performed a State agency case analysis with respect to Plaintiff's allegations of hypertension and slow heart beat on October 25, 2010.  [R. 634.]  She concurred with the RFC of Dr. Hughes.  [*Id.*]  On November 2, 2010, Dr. Waranch performed a State agency case analysis regarding

23

Plaintiff's alleged mental impairments. [R. 635.]  He affirmed Dr. Richard Kaspar's finding

that Plaintiff's mental impairments were not severe under Listings 12.06 and 12.09. [R. 635,

611.]

### ALJ's Weighing of Dr. Hudson's opinion

The ALJ noted Dr. Hudson's treatment records from August 8, 2011 through May

21, 2012 were the primary source of evidence for the time between the 2010 decision and

the present case.  [R. 28.]  The ALJ found the symptoms presented by Plaintiff to Dr.

Hudson were consistent with those made during his prior alleged period of disability, and

the evidence did not indicate a worsening of Plaintiff's condition. [R. 29.]  Additionally, the

ALJ concluded that Dr. Hudson's examinations were mostly unremarkable as were

examinations prior to the alleged onset date.  [*Id.*]  The ALJ determined Dr. Hudson's

findings were

> a drastic digression of the claimant's functional capacity when
> compared to the RFC finding in the previous decision and as
> I have stated above, there is relatively little evidence
> supporting the claimant's allegations that his symptoms have
> worsened.  Furthermore, Dr. Hudson's own notations indicate
> relatively benign examinations.  She regularly notes that the
> claimant was well developed, well nourished and under no
> acute distress (Exhibit 16F).  Dr. Hudson also notes normal
> musculoskeletal examinations, normal neck alignment and
> mobility, and a normal gait (Exhibit 16F).   Accordingly, I
> attribute limited weight to her findings.

[R. 31.]

The ALJ attributed significant weight to the findings of the State agency medical

consultants from September 2010 and October 2010 and found their opinions were

consistent with Dr. Hudson's limited treatment records which noted normal musculoskeletal

examinations, normal neck alignment and mobility, and a normal gait.  [R. 29.]

### Discussion

The Plaintiff argues the ALJ committed reversible error by failing to accord great weight to Dr. Hudson's Physician Statements, giving greater weight to the opinions of non-treating physician and failing to consider all of the medical evidence. [Doc. 16 at 11–16.] The Court disagrees.

As an initial matter, under SSR 96-5p, Dr. Hudson's opinion that Plaintiff is disabled is not entitled to controlling weight. The ALJ considered Dr. Hudson's opinion, as required and found it inconsistent with her rather benign treatment records. Plaintiff failed to prove that the ALJ's reasoning for giving Dr. Hudson's opinion little weight was logically or legally insufficient. The ALJ explained his consideration of Dr. Hudson's opinion, Dr. Hudson's treatment records, and the other medical evidence of record, and found there was no evidence to support Dr. Hudson's opinion that Plaintiff's impairments would render Plaintiff disabled.

The ALJ also explained the weight given to the State agency medical consultants and found their opinions were consistent with the other substantial medical evidence, or lack thereof. [R. 29.] The ALJ is obligated to weigh the State agency medical consultants' opinions using the same factors used for other sources. *See* 20 C.F.R. § 416.927(e)(2) (providing that the ALJ must explain the weight he gives to the opinions of agency doctors, which are evaluated using the same factors used for other medical sources); SSR 96-6p (stating that "[s]tate agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act"); *Smith v. Schweiker*, 795 F.2d 343, 345–46 (4th Cir. 1986) (holding the opinion of a non-examining physician can constitute substantial evidence to

25

support the decision of the Commissioner).  Plaintiff points to no error in the ALJ's analysis of these opinions and fails to direct the Court to any evidence of record ignored or not considered by the ALJ.

Upon review, the Court finds the ALJ adequately explained his consideration of Dr. Hudson's opinion in light of the record evidence and explained his weighing of the same. Further, the ALJ properly weighed and considered all the evidence of record and the opinions of the State agency medical consultants.  Accordingly, the Court finds the weight assigned to Dr. Hudson's opinion by the ALJ is supported by substantial evidence.

**Albright Decision/APA**

Plaintiff argues the ALJ improperly gave weight to his own prior decision despite it being remote in time and despite the opinion evidence from Plaintiff's primary care physician documenting significant impairment.  [Doc. 16 at 9.]  Further, Plaintiff argues his due process rights were violate when the ODAR failed to follow the law and assigned his application back to the same judge that issued a prior unfavorable decision.  [*Id.*]  The Commissioner contends the ALJ's findings are entirely consistent with *Albright* given the extreme proximity of the time between Plaintiff's former and current applications.  [Doc. 20 at 5.]  Further, the Commissioner argues Plaintiff has not established any due process violation resulting from the assignment of Plaintiff's subsequent application to the same ALJ that decided his prior application.  [*Id.* at 6–7.]  The Court agrees with the Commissioner.

As an initial matter, Plaintiff fails to explain how the assignment of his current case to the same ALJ violates any due process rights he may have in the hearing process under the APA.  The United States Code provides that:

26

> Each agency shall appoint as many administrative law judges as are necessary for proceedings required to be conducted in accordance with sections 556 and 557 of this title. Administrative law judges shall be assigned to cases in rotation so far as practicable, and may not perform duties inconsistent with their duties and responsibilities as administrative law judges.

5 U.S.C. § 3105. The Supreme Court has explained that "the 'so far as practicable' language in the statute allows assignments to be determined by more than just the mere mechanical rotation of giving the next case on the docket to the top name on the list of available examiners." *Sykes v. Bowen*, 854 F.2d 284, 288 (8th Cir. 1988), citing *Ramspeck v. Fed. Trial Exam'rs Conference*, 345 U.S. 128, 139 (1953). Factors to be considered include the complexity of the case as well as the experience and ability of the ALJ. *AAACON Auto Transp., Inc. v. I.C.C.*, 792 F.2d 1156, 1163 (D.C. Cir. 1986).

Here, Plaintiff does not suggest the reassignment of his case to the same ALJ was inconsistent with the duties or responsibilities of the assigned ALJ or that he was not provided a full and fair hearing. Thus, the Court finds Plaintiff's APA challenge to be without merit.

With respect to Plaintiff's argument under *Albright*, Plaintiff fails to establish that the ALJ improperly applied the ruling of the Fourth Circuit Court of Appeals. *Albright* held that a "finding of a qualified and disinterested tribunal" is probative in subsequent administrative proceedings as a "practical illustration of the substantial evidence rule." 174 F.3d at 477. In Acquiescence Ruling ("AR") 00-1(4), the Administration adopted, for application only to claims arising in the Fourth Circuit, a rule requiring that:

> When adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during

a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

Where the prior finding was about a fact which is subject to change with the passage of time, such as a claimant's residual functional capacity, or that a claimant does or does not have an impairment(s) which is severe, the likelihood that such fact has changed generally increases as the interval of time between the previously adjudicated period and the period being adjudicated increases. An adjudicator should give greater weight to such a prior finding when the previously adjudicated period is close in time to the period being adjudicated in the subsequent claim, e.g., a few weeks as in Lively. An adjudicator generally should give less weight to such a prior finding as the proximity of the period previously adjudicated to the period being adjudicated in the subsequent claim becomes more remote, e.g., where the relevant time period exceeds three years as in *Albright*. In determining the weight to be given such a prior finding, an adjudicator must consider all relevant facts and circumstances on a case-by-case basis.

2000 WL 43774, at *4.

Here, the ALJ acknowledged this was Plaintiff's third application for Title XVI disability benefits. [R. 14.] Plaintiff applied in 2003 and was denied in 2006 at the hearing level; Plaintiff applied again in 2009 and was denied in 2010 at the hearing level. [R. 14, 77–84, 88–102.] In the 2010 decision, it was determined that the claimant had the following impairments: degenerative disc disease of the cervical spine, hypertension, headaches,

28

and borderline intellectual functioning. [R. 14, 28, 90.] It was also found that Plaintiff

retained the RFC to perform less than a full range of light work, with additional limitations

as to frequent climbing, balancing, stooping, kneeling, crouching, and crawling; the

occasional climbing of ropes, ladders, and scaffolds; avoiding concentrated exposure to

hazards; and the performance of simple one or two-step tasks. [R. 14, 28, 95.] This

decision is dated July 30, 2010, five months before the Plaintiff's amended alleged onset

date of December 3, 2010.[9] [R. 28, 102.] The ALJ gave great weight to the findings of the

2010 decision noting there had been relatively little change in Plaintiff's symptoms and

impairments since the decision. [R. 28.] The ALJ explained:

> Medical evidence after the date of the last ALJ decision is fairly
> limited and consists primarily of treatment records of Dr.
> Hudson. As noted above, the claimant presented to Dr.
> Hudson from August 8, 2011 through May 21, 2012 (Exhibits
> 16F and 19F). He reported symptoms of headaches, neck
> pain, anxiety attacks, depression, fatigue, lack of motivation,
> and difficulty breathing, which is consistent with the claimant's
> previous allegations (Exhibit 2A). However, objective
> observations in her treatment notes indicate the claimant's
> impairments are not as disabling as he alleges. For instance,
> Dr. Hudson noted that the claimant was well developed, well
> nourished and under no acute distress. Her [*sic*] mood and
> affect was mildly depressed (Exhibit 16F, Pages 2-3). On
> October 19, 2011, the claimant reports a little upper chest pain

---

[9]Plaintiff takes issue with the ALJ's determination that the 2010 decision and the present action should be considered in "close proximity" because the 2010 decision was rendered in July 2010 and the current decision was rendered twenty-seven months later. [Doc. 24 at 2.] However, the fact remains that Plaintiff filed his present application only ten days after the ruling in the 2010 decision. Further, the ALJ failed to find that Plaintiff's condition deteriorated or that Plaintiff presented any changes in his condition warranting a finding of disability. Plaintiff also argues Dr. Hudson's opinions were based on Plaintiff's chronic pain and Plaintiff's pain should have been evaluated under the Fourth Circuit pain standards. [*Id.*] The Fourth Circuit pain standard, however, is used to evaluating credibility determinations based on pain, not treating physician opinions on pain. Here, Plaintiff did not challenge the ALJ's credibility findings.

on occasion (Exhibit 16F, Page 10). A musculoskeletal examination revealed a normal gait with no antaxia. An examination of the head and neck revealed normal alignment and mobility (Exhibit 16, Page 12). On February 27, 2012, the claimant was noted as well developed, well nourished and in no acute distress (Exhibit 19F, Page 10). On May 21, 2012, the claimant reported feeling well on his current medicines. He reported no chest pain or discomfort and he denied muscle weakness. The claimant appeared well developed and well nourished (Exhibit 19F, Page 15).

Regarding the claimant's hypertension, the record does not indicate any exacerbation of this impairment after July 30, 2010 (the date of the last decision) and on February 6, 2012, Dr. Hudson noted that the claimant is tolerating his blood pressure medication. The claimant denied chest pain or discomfort. He denied shortness of breath (Exhibit 19F, Page 4). The claimant reported symptoms of cluster headaches, neck pain, and back pain, which limit him to lifting no more than 5 pounds and standing for no more than 10 minutes. These allegations are consistent with those made during his prior alleged period of disability. As noted above, the evidence does not indicate a worsening in the claimant's condition. Dr. Hudson's examinations are unremarkable (Exhibit 19F) as are examinations prior to the alleged onset date. For instance, on July 8, 2010, a musculoskeletal examination of the right lower extremity revealed a normal range of motion and no swelling (Exhibit 3F, Page 10). He was able to ambulate independently (Exhibit 3F, Page 12). Accordingly, I have limited the claimant to light work.

In light of the fact that the mere passage of time (albeit a mere 5 months since the date of the last decision and his current alleged onset date) can cause a digression in the claimant's condition, I have further limited the claimant's postural limitations. I have also imposed manipulative limitations of occasional overhead reaching in light of the claimant's degenerative disc disease of the cervical spine and allegations of upper extremity pain and numbness (on April 2, 2012, the claimant reported left sided neck pain and numbness down his arm, a weak grip, and a sore arm and leg (Exhibit 19F, Page 12).

[R. 28–29.]

30

Upon review, the Court finds the ALJ considered the findings from the previous decision and gave them appropriate weight in accordance with AR 00–1(4) and *Albright*, particularly considering the close proximity of time and the ALJ's conclusion that the evidence did not indicate a worsening of Plaintiff's condition.  The 2010 decision was entered July 30, 2010 [R. 102], and Plaintiff filed the present application for SSI ten days later on August 9, 2010 [R. 141–47].  There was no evidence Plaintiff suddenly became disabled ten days after the denial of his second application for benefits or that his condition worsened to the point of his becoming disabled.  However, in the present case, the ALJ imposed additionally limitations on Plaintiff's RFC in consideration of Plaintiff's degenerative disc disease and allegations of upper extremity pain and numbness.  [R. 29.]  The ALJ considered the medical evidence of record and the records from the previously adjudicated period and, finding no evidence of a worsening condition, properly adopted the findings of the 2010 decision.  *See Deaton v. Astrue*, 2011 WL 4062993 at * 4 n. 2 (S.D. Ohio July 7, 2011) (deciding that where the ALJ found no evidence to suggest Plaintiff's condition had worsened since prior decision, he properly adopted those findings).  Accordingly, the Court finds substantial evidence that the ALJ's decision comports with the requirements of *Albright*.

## <u>CONCLUSION AND RECOMMENDATION</u>

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 3, 2015
Greenville, South Carolina.